**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

**UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**

Plaintiff,

v.

**NOVO NORDISK, INC.**,

Defendant.

Civil Action No. 22-3482 (ZNQ) (RLS)

**OPINION**

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon a Motion to Dismiss filed by Defendant Novo Nordisk, Inc. ("Defendant"). ("Motion", ECF No. 11.) Defendant filed a Brief in Support of its Motion. ("Moving Br.", ECF No. 11-1.) Plaintiff United States Equal Employment Opportunity Commission ("EEOC") opposed the Motion ("Opp.", ECF No. 12) and Defendant replied ("Reply", ECF No. 13).

The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, the Court will GRANT Defendant's Motion to Dismiss.

## I. BACKGROUND AND PROCEDURAL HISTORY

This is an age discrimination suit under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq*. (the "ADEA"). In 2015, Deborah Hunter ("Ms. Hunter") began working for Defendant as an Obesity Care Specialist in Phoenix, Arizona. (Compl. ¶ 7, ECF No.

1.) Her responsibilities included visiting healthcare providers and other "stakeholders" in a given territory to promote Defendant's products. (*Id.*) In or about January 2018, Ms. Hunter was assigned to Defendant's territory covering Phoenix, Arizona, requiring her to commute more than fifty miles per day from her home in Scottsdale, Arizona. (*Id.*) At approximately the same time—when Hunter was 62 years old—she sought a lateral transfer to an open position in Flagstaff, Arizona. (*Id.*) She was interviewed but was told by her manager in early 2018 that he denied her transfer because he wanted someone to who was going to be in the territory "long term." (*Id.*) Hunter construes this as a "clear reference to her age." (*Id.*) The manager instead selected a 33-year-old male for the Flagstaff, Arizona territory. (*Id.*)

When Ms. Hunter complained to Defendant, it investigated. (*Id.*) Defendant's investigation concluded that the Manager refused Hunter the position based on her age, and that he had violated the company's policy by doing so. (*Id.*) Defendant terminated the Manager. (*Id.*) Defendant did not offer Hunter the lateral transfer. (*Id.*)

The EEOC interceded on Hunter's behalf and sought Defendant's voluntary compliance with the ADEA via informal methods. (*Id.* ¶ 6.) On January 6, 2022, the EEOC filed this suit. Defendant responded with the instant Motion to Dismiss. (*See* ECF No. 11.)

## II. JURISDICTION

Given the EEOC's status as Plaintiff, and its federal claim, the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1345.

## III. LEGAL STANDARD

Under Fed. R. Civ. P. 12, a complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most

favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quotations omitted). Under such a standard, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[A] complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

However, Rule 12(b)(6) only requires a "short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. The complaint must include "enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (citation and quotations omitted); *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citation and quotations omitted)).

In sum, under the current pleading regime, when a court considers a dismissal motion, three sequential steps must be taken: first, "it must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quotations

omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. (quotations omitted). Lastly, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. (quotations and brackets omitted).

## IV. <u>DISCUSSION</u>

Defendant's position in its Motion is a relatively straightforward, legal one: it believes the Complaint fails to state a cognizable claim for age discrimination because Defendant's denial of Hunter's lateral transfer does not rise to the level of an "adverse employment action" within the meaning of the ADEA. (Moving Br. at 4.) In support, Defendant cites various decisions from the Third Circuit requiring that a challenged employer's decision be "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." (*Id.* at 4–9) (quoting *Fiorentini v. William Penn. Sch. Dist.*, 665 F. App'x 229, 234 (3d Cir. 2016)).

The EEOC takes the opposite position, contending that Ms. Hunter's denied lateral transfer constitutes an adverse employment action under the ADEA. (Opp. at 3–4.) It argues that there is no precedential, binding authority from the Third Circuit holding that a lateral transfer is not an adverse employment action. (*Id*. at 9–10.) The EEOC points instead to a recent *en banc* decision from the D.C. Circuit Court of Appeals in the analogous context of a Title VII discrimination suit involving a lateral transfer, together with the EEOC's own implementing regulations. (*Id*. at 5–8.)

The ADEA makes it unlawful for an employer to discriminate against an employee due to an individual's age. *See* 29 U.S.C. § 623. Specifically, the ADEA prohibits an employer from "fail[ing] or refus[ing] to hire" or "discharge any individual or otherwise discriminate against any

individual with respect to his. . .terms, conditions, or privileges of employment, because of such individual's age[.]" 29 U.S.C. § 623(a)(1). Under the ADEA, a plaintiff must establish that she: (1) was over forty years old; (2) was qualified for the position; (3) suffered an adverse employment action; and (4) was replaced by a person sufficiently younger to permit an inference of age discrimination. *See Duffy v. Paper Magic Grp., Inc.*, 265 F.3d 163, 167 (3d Cir. 2001).

To satisfy the third element, a complaint must contain sufficient facts to plausibly show that she suffered an adverse employment action. *See Jones v. SEPTA*, 796 F.3d 323, 327 (3d Cir. 2015). The Third Circuit has "described an adverse employment action 'as an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" *SEPTA*, 796 F.3d at 326 (quoting *Storey v. Burns. Intern. Sec. Serv.*, 390 F.3d 760, 764 (3d Cir. 2004)); *see also Burlington Indus., Inc., v. Ellerth*, 524 U.S. 742, 761 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."). "If an employer's act substantially decreases an employee's earning potential and causes significant disruption in his or her working conditions, a tangible adverse employment action may be found." *Id*. (citation omitted). "[A]ctions such as lateral transfers and changes of title or reporting relationships have generally been held not to constitute adverse employment actions." *Walker v. Centocor Ortho Biotech, Inc.*, 558 F. App'x 216, 219 (3d Cir. 2014) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)); see also *Langley v. Merck & Co., Inc.*, 186 F. App'x. 258, 260 (3d Cir. 2006) ("Minor actions, such as lateral transfers and changes of title and reporting relationships, are generally insufficient to constitute adverse employment actions.").

Here, the EEOC cites to the following incidents to support the adverse action suffered by Plaintiff: In or about January 2018, Ms. Hunter was assigned to Defendant's Phoenix, Arizona territory, which required her to commute more than fifty miles per day from her home in Scottsdale, Arizona; in 2018, most of Defendant's business and clients for the Flagstaff, Arizona position were located in the Scottsdale, Arizona area;, Ms. Hunter interviewed for a lateral position in Flagstaff, Arizona; Defendant's Business Manager told Ms. Hunter that he denied her lateral transfer because he wanted someone who was going to be in the territory "long term." (Compl. ¶ 7.)

Plaintiff asserts that she was denied transfer to another location, but fails to plead any other facts indicating the denial resulted in harm. The Complaint fails to identify any specific harm Ms. Hunter suffered as a result of Defendant denying her transfer.  The Complaint merely indicates that most of Defendants' business and clients were located in the Scottsdale, Arizona area and Ms. Hunter's home was located in Scottsdale, Arizona. (*See* Compl. ¶¶ 7(d), 7(f).)  While EEOC claims that Ms. Hunter's current position requires her to travel over fifty miles a day (*id*. ¶ 7(c)), such an allegation, however, is not telling of an adverse employment action.  Assuming the commute was the principal issue, the Complaint does not compare what Plaintiff's commute would have been were she not denied her desired territory.  The Complaint does not allege whether it would be more or less convenient, costly, or profitable, for Ms. Hunter to be located in Flagstaff rather than Phoenix.  Nothing within the Complaint indicates that Defendant's denial of Ms. Hunter's transfer was "serious and tangible enough to alter [her] compensation, terms, conditions, or privileges of employment." *Fiorentini*, 665 F. App'x at 234.  The Complaint therefore does not

contain sufficient facts to plausibly allege that Ms. Hunter suffered an adverse employment action. *See SEPTA*, 796 F.3d at 326–27.[1]

## V. CONCLUSION

For the reasons stated above, the Court will GRANT the Motion and DISMISS the Complaint WITHOUT PREJUDICE. The Court will also permit EEOC another opportunity to plead its claims by granting leave to file an Amended Complaint within 30 days.

Date: **May 31, 2023**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

[1] Accordingly, the Court, at this stage, does not determine whether denying a lateral transfer in this case is an adverse employment under the ADEA and will not address parties' arguments with respect to the same.